## Marilyn NORTHRUP, f/k/a Marilyn Ferrian, Appellant,

v.

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

### No. C0–99–268.

Court of Appeals of Minnesota.

Nov. 9, 1999.

Michael J. Fay, McSweeney & Fay, P.L.L.P., Minneapolis, for appellant.

Kay Nord Hunt, Sheila A. Bjorklund, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondent.

Considered and decided by CRIPPEN, Presiding Judge, LANSING, Judge, and KALITOWSKI, Judge.

## OPINION

CRIPPEN, Judge.

Appellant Marilyn Northrup was seriously injured and her husband was killed in a motorcycle accident. She received liability insurance proceeds up to the policy limits for the motorcycle, but the amount was insufficient to cover her injuries. She challenges the trial court's determination that she was not entitled to underinsured motorist coverage stated in her own policy for her pickup truck, and issued by respondent State Farm Mutual before the couple married, for her pickup truck.

The trial court's summary judgment enforces language in appellant's policy that excludes from the definition of "underinsured" those vehicles and cycles that are regularly used by the insured or her "spouse or any relative." This type of limiting clause, whether employed regarding underinsured vehicles or those that are wholly uninsured, prevents payment of benefits to someone who owns a vehicle where someone was injured and who was, as a result of this ownership, the person whose decisions on coverage rendered the vehicle or its occupants poorly insured. Problematically, the exclusion at issue gov-

erns not only a vehicle or cycle owned by the insured/occupant but also any such machine owned by the insured's spouse or other relative.

We reverse, concluding as did the supreme court in other circumstances, in *American Nat'l Property & Cas. Co. v. Loren,* 597 N.W.2d 291, (Minn.1999), that the reach of the occupant's policy exclusion to a relative's cycle violates the statutes that require underinsurance coverage and otherwise state the aim to ensure that victims of vehicle accidents receive adequate compensation for their injuries.

## FACTS

Appellant and her husband were married in May 1997. Later that year, they were involved in a motorcycle accident in which appellant's husband ran through a stop sign and collided with another vehicle. Appellant's husband was killed, and appellant sustained serious injuries. The amount available under the insurance policy that her husband had on the motorcycle did not fully cover her injuries.

Appellant owned a separate insurance policy from respondent insurer on a truck that she personally owned. The policy had been issued before her marriage. On January 8, 1998, respondent was notified of appellant's settlement with her husband's insurer pursuant to *Schmidt v. Clothier,* 338 N.W.2d 256, 262–63 (Minn.1983), but did not substitute its draft. Appellant then made a formal request to respondent for payment of the underinsured motorist coverage under her policy. Respondent denied any obligation, citing a policy provision that excepts from "underinsured" vehicles "any vehicle or motorcycle regularly used by the insured or her spouse or other relative." Appellant then initiated this suit, which the trial court dismissed in a summary judgment.

## ANALYSIS

■ Contract provisions that conflict with statutory law will not be enforced.

*Roering v. Grinnell Mut. Reinsurance Co.,* 444 N.W.2d 829, 833 (Minn.1989) (citing *AMCO Ins. Co. v. Lang,* 420 N.W.2d 895, 900 (Minn.1988)).

■ In 1985 in nearly identical circumstances we determined that an exclusion reaching to family-owned vehicles was invalid because it represented an attempt to deprive the injured person of coverage that followed the person and conflicted with the purpose of the no-fault act to see that accident victims are adequately compensated. *DeVille v. State Farm Mut. Auto. Ins. Co.,* 367 N.W.2d 574 (Minn.App. 1985), *review denied* (Minn. July 26, 1985); *see also Loren,* 597 N.W.2d at 292–95 (reiterating principle that insurer may not provide less coverage than required by the act; deferring to the purposes of the act, as stated in Minn.Stat. § 65B.42(1)(1998), to ensure that victims of automobile accidents receive adequate compensation for their injuries).

*DeVille* and similar holdings were subsequently cited with approval by the supreme court in *Petrich v. Hartford Fire Ins. Co.,* 427 N.W.2d 244, 245 (Minn.1988) (observing that claimant, even though occupying an uninsured car owned by his stepfather, would be entitled to recover first party, uninsured motorist benefits under any policy he had purchased on his own car).

Respondent and the trial court dismiss *DeVille,* relying on subsequent legislative and judicial developments that permit uninsured and underinsured motorist exclusions in policies of owners and operators of motorcycles. Those exclusions prevent the payment of uninsured or underinsured motorist benefits under policies on other vehicles, so that these insureds do not receive these benefits after having chosen not to purchase them for their cycle—a choice they are permitted to make by reason of the policy initiative in the no-fault act to exclude cycles from the man-

date that vehicle policies include uninsured and underinsured motorist coverage. *See Roering*, 444 N.W.2d at 833–36 (Coyne, J., dissenting) (reviewing legislative and judicial efforts to avoid efforts of cycle owners to obtain additional benefits by stacking coverage purchased on other vehicles). Before reviewing these developments, it is essential to observe the fundamental fact in the circumstances addressed in *DeVille*, that enforcement of the underinsured motorist coverage did not constitute an unwarranted addition to coverage purchased by the cycle owner because the additional coverage was provided in a separate policy purchased by the cycle passenger who was injured. *DeVille*, 367 N.W.2d at 577. Our recent opinion in *Staley v. Metropolitan Property & Cas. Ins. Co.*, 576 N.W.2d 175 (Minn.App.1998), *review denied* (Minn. June 17, 1998), suggests the continued vitality of *DeVille* on the topic of a relative's rights to recover under his or her own policy.

Judicial developments since *DeVille* have followed the same course as the cases reviewed in that opinion. As the *DeVille* court observed, the supreme court has repeatedly defined circumstances in which an exclusion will be upheld in order to prevent the conversion of an owner's first party coverage into more costly and thus unpaid-for liability coverage. *DeVille*, 367 N.W.2d at 576–77. This doctrine regarding underinsured benefits was first announced in a holding that denied the claim of a car occupant under a policy written on the at-fault vehicle. *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288 (Minn.1983). Subsequently, the same result was announced for uninsured motorist benefits when the court approved application of an exclusion to the at-fault car occupant's claim under a policy written on the car owner's other vehicles. *Petrich*, 427 N.W.2d 244.

The *Myers/Petrich* doctrine has been employed in the context of motorcycle coverage in *Wintz v. Colonial Ins. Co.*, 542 N.W.2d 625 (Minn.1996), where uninsured motorist benefits were sought by the occupant of a wholly uninsured motorcycle driven by her husband and owned by her stepson. The claim was brought under a policy purchased by the claimant's husband, the cycle operator, on his other vehicles. *Wintz*, 542 N.W.2d at 626. The court upheld a family-member exclusion as a device to avoid converting uninsured motorist coverage into liability coverage on the cycle, a problem that theretofore had not been encountered with respect to the policy of a cycle operator who was the user but not the owner of the cycle. *Wintz*, 542 N.W.2d at 627. The *Wintz* court explicitly followed *Petrich*, noting that the *Petrich* decision was consistent with legislative efforts in 1985 to permit exclusions of uninsured and underinsured motorist coverage for owners of uninsured vehicles. *Wintz*, 542 N.W.2d at 626–27.

■ Significantly, the supreme court has not suggested application of the doctrine of *Myers/Petrich/Wintz* to the circumstances faced in *DeVille* and reviewed again in this case. Appellant Marilyn Northrup is not the owner or operator of the cycle she occupied and there is no evidence that she was a party to the decisions made regarding the purchase of coverage for the cycle. Her claim is premised on her own policy, purchased on another vehicle before she was married to the person who owned and operated the cycle at the time of her injury. There was no evidence in this case that appellant had an ownership interest in the cycle, nor was there any evidence suggesting that appellant manipulated coverage to make possible her claim for benefits under her own policy.

Our analysis of both the judicial precedents and the governing statutes is confirmed by the *Loren* decision published in July 1999. *Loren*, 597 N.W.2d 291. In

that case, the injured claimant was operating a cycle owned by his son but was not claiming benefits arising from faulty operation of the cycle. *Id.* Rather, he sought underinsurance benefits related to the fault of the driver of a vehicle that struck the cycle—benefits that pose no risk of stacking to provide added liability coverage on the cycle. The significance of the holding for this case is in its analysis of relevant statutes, demonstrating that they are not inconsistent with *DeVille* and its progeny. *Id.* at 293–95.

The legislature determined in 1985 that uninsured and underinsured motorist coverage is not required for one who is "occupying a motor vehicle owned by the insured, unless the occupied vehicle is an insured motor vehicle." Minn.Stat. § 65B.49, subd. 3a(7) (1998).[1] Thus, the supreme court has determined that the owner of an uninsured motorcycle could not claim uninsured motorist coverage under his own policy on another vehicle, even in regard to liability of another vehicle that struck the cycle. *Hanson v. American Family Mut. Ins. Co.*, 417 N.W.2d 94, 96 (Minn.1987).

After a supreme court decision in 1989 that subdivision 3a(7) did not apply to a motorcycle insured for liability, the legislature enacted another subsection to state that uninsured and underinsurance cover-age is not required for injuries "of the insured while occupying a motorcycle owned by the insured." Minn.Stat. § 65B.49, subd. 3a(8) (1998); *see* 1990 Minn. Laws, c. 504, § 1.[2] Before *Loren*, it remained undetermined whether subparts (7) and (8) of this subdivision extended only to the one who "owned" the occupied vehicle or might extend as well to a vehicle owned by a resident relative. *Loren* confirmed the plain meaning of the statutes, applying them only to owners. *Loren*, 597 N.W.2d at 294. Just as *DeVille* recognized in its analysis of judicial developments under the no-fault act—respecting the risk of converting first party benefits to extra liability coverage on an at-fault vehicle—*Loren* recognized that a non-owner occupant may claim the benefits of first party coverage purchased by that person on other owned vehicles. The principal relevant statutes, subparts (7) and (8) of Minn.Stat. § 65B.49, subd. 3a, do not provide otherwise.

Respondent points to a 1990 amendment of subpart (5) of Minn.Stat. § 65B.49, subd. 3a, contending that the amendment ends a requirement for benefits that are denied by respondent's exclusion. In separate paragraphs, this statute first states the uninsured/underinsured entitlements of those who occupy a motor vehicle and then declares the benefits for those, such as pedestrians, who do not.[3] Under the

---

1. The subpart provides:

   The uninsured and underinsured motorist coverages required by this subdivision do not apply to bodily injury of the insured while occupying a motor vehicle owned by the insured, unless the occupied vehicle is an insured motor vehicle.
   Minn.Stat. § 65B.49, subd. 3a (7).

2. The statute provides:

   The uninsured and underinsured motorist coverages required by this subdivision do not apply to bodily injury of the insured while occupying a motorcycle owned by the insured.
   Minn.Stat. § 65B.49, subd. 3a (8).

3. In full, the subsection provides as follows:

   If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle. However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured. The excess insurance protection is limited to the extent of covered damages sustained, and further is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is an

second paragraph, non-occupants are entitled to "select any one limit of liability for any one vehicle afforded by a policy under which the injured person in insured." Minn.Stat. § 65B.49, subd. 3a(5) (1998).

The most recent amendment of the second paragraph constitutes a legislative action to limit this category of non-occupants who are entitled to recover even under their own policy. Formerly, this category of non-occupants included anyone "who is not occupying a motor vehicle," which would include, in addition to pedestrians, a motorcycle occupant—because the no-fault act excludes cycles from the definition of a motor vehicle. *Roering*, 444 N.W.2d at 832–33; *see* Minn.Stat. § 65B.43, subd. 2 (1998) (motor vehicle definition does not include motorcycles). The amendment eliminated all motorcycles from the paragraph, restricting its application to injured persons "not occupying a motor vehicle or motorcycle." Minn.Stat. § 65B.49, subd. 3a(5) (1998).[4]

This amendment does not materially affect this case. Under the first paragraph of subpart (5), one who is "occupying a motor vehicle" is generally entitled to no more uninsured or underinsured motorist coverage than is specified for the occupied vehicle. But the paragraph includes the added provision, for one occupying a vehicle "of which the injured person is not an insured," the right to recover "excess insurance protection afforded by a policy in which the injured party is otherwise insured." Appellant seeks such excess protection, in this instance benefits greater than none at all, there being no underinsurance benefits stated for the at-fault cycle. And appellant was "occupying a motor vehicle" under pertinent law, even before 1990.[5]

. The occupant/not-the-insured of a motorcycle is uniquely outside the parameters of legislation to limit coverage for injuries suffered while occupying a motorcycle. We note that the dissent written by Justice Coyne in *Roering* and relied on by respondent is harmonious with these developments. The dissent was directed to the matter of limits on the motorcycle owner's ability to convert uninsured or underinsured motorist benefits, written on another vehicle, to cover injuries sustained by the owner while riding a motorcycle. 444 N.W.2d at 833–36 (Coyne, J., dissenting).

Under *Loren*, the respondent's exclusion reaches beyond what is permitted by subparts (7) and (8) of Minn.Stat. § 65B.49, subd. 3a. The breadth of the exclusion is not permitted by the language of subpart 5 of the same subdivision. It reaches further than the legislature has permitted in subdivision 3a. It also contradicts the promise of the no-fault act to provide adequate compensation for victims of automobile accidents. *See* Minn.Stat. § 65B.42 (1) (1998) (setting out purposes of the act);

---

insured exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle.
　If at the time of the accident the injured person is not occupying a motor vehicle or motorcycle the injured person is entitled to select any one limit of liability for any one vehicle afforded by a policy under which the injured person is insured.
Minn.Stat. § 65B.49, subd. 3a (5) (1998).

4. Even without the 1990 amendment, appellant would be "occupying a motor vehicle" and would not be entitled to select her coverage under the provisions of the second paragraph of subpart (5). *See infra* note 5.

5. In 1985, the legislature added Minn.Stat. § 65B.43, subd. 17, to provide that an underinsured "motor vehicle" includes a motorcycle. *Hanson*, 417 N.W.2d 94, held that this more expansive definition of motor vehicle applies with regard to underinsured vehicles. *Cf. Roering*, 444 N.W.2d at 833 (applying the non-occupant provisions of subdivision 3a(5) notwithstanding the language of section 43, subdivision 17, where the claimant's motorcycle was not itself underinsured and his claim was evidently premised on fault of the driver of another vehicle).

*see also DeVille*, 367 N.W.2d at 576 ("Adequate compensation begins with allowing injured parties to collect benefits on all policies for which they have paid."). Significantly, our decision to invalidate the exclusion comports with the only precedents dealing with the claims of an occupant/not-the-owner, stating a claim under the occupant's own coverage on another vehicle. *See Petrich*, 427 N.W.2d at 245 (dicta); *DeVille*, 367 N.W.2d 574.

Respondent points to the importance of the legislative determination that only liability coverage, not uninsured motorist or underinsured motorist coverage, is compulsory for motorcycles. Minn.Stat. § 65A.49, subd. 3a (1) (1998) (mandating uninsured motorist and underinsured motorist benefits for motor vehicles, a category that excludes motorcycles under Minn. Stat. § 65B.43, subd. 2 (1998)); *see Roering*, 444 N.W.2d at 835 (Coyne, J. dissenting). But this characteristic of the statute has not been substituted by the supreme court for a more specific consideration of the statutes on uninsured and underinsured motorist coverage. More specifically, this underlying policy determination has not led to denial of benefits under the policy of an occupant who is not the insurer of the occupied vehicle. *See Petrich*, 427 N.W.2d at 245 (dicta); *DeVille*, 367 N.W.2d 574. The separately insured, non-owner occupant succeeds on the argument for first party coverage, as stated again by appellant in this case, that the purchaser of the coverage is entitled to get what has been paid for.

Finally, respondent advances the policy concern that appellant's success in this case permits a party to enjoy inexpensive coverage that substitutes for more expensive liability coverage her spouse might purchase for her sake. This point, we conclude, is for the legislature and not for the courts. As is indicated in our analysis of the case, confirmed by the supreme court opinion in *Loren*, the legislature has not determined that an insured should lose first-party benefits because of the insuring decisions of a family member who owns a motorcycle.

## DECISION

The coverage mandates in the current no-fault act invalidate an insurance policy exclusion in appellant's separate policy that denies her underinsured motor vehicle coverage respecting fault of her husband in operating a motorcycle. The insurer was not entitled to the trial court's summary judgment.

**Reversed.**